Martin, J.
delivered the opinion of the court. The plaintiffs claim a lot of ground between the original limits of the city of New-Orleans and the line called Gayoso’s line.
To establish their title, the first document introduced is the process verbal of the adjudication of a plantation, binding on the limits of city, as part of the estate of M. Dubreuil, pursuance of a decree of the superior council of the province of Louisiana, of the 4th of November, 1758. By this document it appears on the 17th of that month, the commissary of the council, and the king’s attorney-general, caused a proclamation to be made, at the bar of the council, that they were about to proceed, the sale and adjudication, to the last and bidder, of the aforesaid plantation, "binding on one side on the limits of the city of New-Orleans, and on the other on the plantation of M. Amelot, having seven arpens and eighteen toises in front, with all the depth, as far as the limits of the bayou (St. John) and Gentilly, together with the main dwelling-house other buildings, the saw-mill with four *194 saws, a rice-mill adjoining, a sugar-mill, and brick-yard with two kilns, containing each 90,000 bricks, five large sheds, a negro camp and generally all the edifices and appurtenances, in the state in which they are.” It is afterwards mentioned that, "whereas the most of these buildings are on ground which belongs to the king, which he has reserved to himself and is not comprised in the seven arpens and one half, we, the commissary and attorney-general, have caused it to be proclaimed that it shall be lawful tor the king to take the said parcel of ground, belonging to him, whenever he may see fit, the purchaser carrying away the buildings thereon, and that the whole being several times well and truly explained came M. Villars, who bid 50,000 livres.” The process verbal next states, that on the 1st of December of the same year, the premises were cried for the second time and Henry Dupaty bid 100,000 livres: and on the 11th of the same month, the premises were cried for the third time, and the plantation was described in the same manner, and notice was given of the king’s right to the ground, on which part of the buildings stood, as on the first day, and M. D’Erneville bid 103,000. But, this not being esteemed the just value of the premises, they were cried up *195 for the fourth time, on the 18th of December of the same year, and the land was described again as formerly, and as the bids began to he received, M. Villars appeared and produced an order from M. De Rochemore, the intendant, requiring that a declaration of Villars, which had been presented to the commissary of the council, at the preceding meeting, and refused to be received, should be extrajudicially received, and mention of the former refusal made, where upon the declaration was entered on the process verbal. It purports that "in order to avert any reproach or contestation from the last bidder, he declares to us, so that we may notify it to present bidders and those who may hereafter attend, that the house which is now selling is situated, as well as all the buildings between it and the city, on the king’s ground, that it was only in consideration of the late M. Dubreuil, his father, that the king consented that the said Dubreuil should occupy the two arpens and twelve toises on which the house and buildings stand, which two arpens and twelve toises remain, while they pass into other hands, liable to be resumed by the king, at the will of his administrators in Louisiana, allowing the purchaser the faculty of removing the buildings. 2. That the declarant reserves to himself sixty days from the acceptance of *196 adjudication to evacuate the premises. 3. Considering himself bound to attend to the interests of the minors, his nephews, whose subrogate tutor he is, the creditors and his own, he understands that the surety, to be given by the purchaser, &c. which conditions” says the process verbal, having been read and explained with an audible voice by the crier, proclamation was made that the plantation was sold, as it was described, payable one half in six months, &c. and M. Delachaise, being the last and highest bidder for the sum of 130,000 livres, the property was finally adjudicated to him : he binding himself to the payment of said sum, to remove all the buildings which stand on the king’s, land, &c.”
About, the year 1774, Delachaise died, and the premises were seized and sold, at the suit of the king of France’s agent in Louisiana, and purchased by Mad. Gauvray de Mauleon: but the deed which she received is admitted to be lost.
On the 4th of October 1776, this lady sold the premises to Gilbert de St. Maxent, describing them as containing seven arpens and one half in front, bounded on one side by the stakes which served as a wall to the city, on the other by Amelot’s land, the whole as she had bought *197 it, at the auction of Delachaise’s property on the 22d of March, 1774.
On the 12th of August 1789, St. Maxent sold the premises to Laurent Sigur, mentioning the limits of the city, as the upper ones of the plantation.
In the year 1792, the Baron de Carondelet caused new fortifications to be thrown around the city, and for this purpose a part of the premises was taken, and Sigur instituted for the rescission of the sale a suit, which was in 1795 converted into a suit to cause himself to he maintained in his possession by the heirs of St. Maxent, who was now deceased, or to obtain damages for the part of the premises taken for the fortifications.
In the year 1797, Sigur instituted a suit to obtain from the Spanish government, an indemnification for the lands occupied by the Spanish fortifications, beyond the French, but the decree denied him any relief, saving, however, his remedy against the estate of St. Maxent.
In 1798, Sigur sold the premises to Marigny, describing them as the plantation, which he had bought from St. Maxent, with an exception of the land which had been taken from him, for the Spanish fortifications, and instituted a suit against the estate of St. Maxent, in which *198 $25,557 were allowed him for the land, beyond that which had been sold to him by Mad. de Mauleon "which St. Maxent had no right to sell”.
In 1811, Sigur instituted another suit, praying an additional indemnification for some land taken for the Spanish fortification, beyond the French, and recovered $3194. In consequence of these two recoveries, the plaintiffs contend they have reacquired their title to the premises thus taken illegally, as they allege, by the Spanish government.
The defendants claim under the corporation of the city of New-Orleans.
It is admitted that in the year 1760, the first fortifications were thrown around the city, commonly known under the name of the French fortifications.
Several witnesses deposed that, at the time of the first adjudication of the plantation to Delachaise, the mansion house stood between the city and the canal, on the ground afterwards resumed by government.
After the demolition of the French fortifications in 1780, St. Maxent took possession of the land as far as the city, with the knowledge of the Spanish governor, and erected thereon some buildings, which he rented out.
*199 About the year 1797, an inquiry was instituted into the titles of adjacent owners, in order to ascertain the extent of the vacant lands, when the declaration of Dubreuil was accidentally discovered, and in pursuance thereto, Governor Gayoso ordered the line commonly called Gayoso’s line to be drawn, at the distance of two arpens and twelve toises from the angle of the barrack.
It is admitted that the ground sued for is between that line and the city, and that the defendant has acquired the title of the corporation thereto.
The process verbal of the adjudication of Dubreuil’s plantation to Delachaise, is the authentic act under which the plaintiffs claim their right to the plantation. It is consequently evidence against them, as to every disposition of the instrument, i. e. of what the parties had in view, and which was the object of the instrument. Farther, it is full evidence, as to whatever is therein expressed by way of recital, when the recital has reference to the disposition. 2 Pothier Obl. nos. 701, 702. Civil Code, 304, art. 219, 220.
Now the parties to this instrument had in view therein the sale of a plantation: their ob *200 ject was to give to future generations testimony that a sale had taken place, and to describe the thing sold. The land is said to he bounded on one side by Amelot’s land, on the other by the limits of the city, and the extent of the front between these two points is said to be seven arpens and eighteen toises. But, on the first and second days of the sale, the commissary of the council and attorney-general, acting as vendors, recite that “most of the buildings are on ground which belongs to the king, which he had reserved to himself, and is not comprised in the seven arpens and eighteen toises,” meaning in the ground sold : the ground sold being that described within the two given points, at the distance of seven arpens and eighteen toises from each other, deducting therefrom the king’s ground. On the third day, Villars appeared and prayed among other things to have the land excepted from the sale, described by its mensuration, two arpens and twelve toises: the officers refusing so to do, this description is ordered by the intendant to be received and the plantation adjudicated accordingly. This description was one of the dispositions of the instrument; but, if it be only considered as expressed by way of recital, and as a clause to which the vendee expressed his assent, yet it is evidence as to *201 the exception of the ground from the sale, because it has reference to one of the dispositions of the instrument, and was necessary to be inserted, in order to ascertain, by a defalcation, what quantity of ground was the object of the sale, i. e. five arpens and six toises, fronting the river.
Certainly, the proceedings, under the Spanish and territorial governments, evidence that the tribunals, who passed on the claim of Sigur for indemnification, considered the subject in the same point of view as the district court, in the present case, and as we do: and the fact is corroborated by a number of witnesses.
It has been attempted to impress us with a belief that Villars’s declaration ought not to be regarded, as he was a party interested—that, being a bidder, he had an interest in lessening the idea which others had of the extent, and consequently of the value, of the plantation. The only hid which he appears to have made is one of 50,000 livres, on the first day, which does not appear to be a bid on which he might have expected to have had the land struck to him, as on the third day the officers declined striking it off at $103,000, considering that sum as too much below its value. But the matter does not rest on this man’s declaration: twice *202 before had the king’s right been proclaimed to the ground, on which the main building stood, and all between that and the city. Villars only fixed the extent to a determinate quantity of ground, two arpens and twelve toises. He could have no expectation of imposing on the bidders, as the matter was susceptible of being easily and instantly ascertained, and all the witnesses shew that the difference could not be great. The officers of the king of Spain have proceeded accordingly, and the correctness of their conduct has become the subject, of investigation in suits to which the plaintiffs, or their principal were a party, and the court here pronounced that he had no right.
Livingston for the plaintiffs. Moreau for the defendants.
We conclude, from the documents and testimony before us, that the line drawn, under the orders of Gov. Gayoso in November 1798, at the distance of two arpens and twelve toises from the angle of the barracks, is the boundary between the plantation of the late Dubreuil, and the ground which belonged to the king when Delachaise purchased it.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.